1  Law Offices of
   ROBERT S. FINK  CSB#65787
2  A Professional Corporation
   6404 Wilshire Boulevard
3  Suite 1001
   Los Angeles, California 90048
4  Tel:  (310)553-8241
   Fax: (310)655-8182
5

6

7  Attorneys for Plaintiff



8

9                    UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11  Fabiola Wright, individually,        )  Case No.:  CV11  0158  AHM (RZx)
                                         )
12                    Plaintiff,         )  COMPLAINT FOR DAMAGES:
                                         )
13                                       )
    v.                                   )  1. Violation of Rights Under Color of State
14                                       )     [42 U.S.C. §1983] §1985, §1981
                                         )  2  Unequal Treatment Compare to Others
15  City of Los Angeles, a Charter       )     [42 U.S.C. §1983]
    City; City of Los Angeles Department )  3. violation of equal rights protection
16  of Building and Safety; City of Los  )     U.S.C. Title 42 Sec. 1981
    Angeles Planning Department;         )  4. Substantive Due Process Violation
17  Vahe Sarkissian , as individual and official )  [42 U.S.C. §1983]
    capacity, Siavosh Poursabahian, as   )  5. Procedural Due Process Violation
18  individual and in his official capacity; )  [42 U.S.C. §1983]
    Charles Boghoskhan, as individual and in )  6.  Unfair Trial Biased Decisions
19  his official capacity; John Hyde as  )     [42 U.S.C. §1983]
    individual and in his official capacity; )  7.  Conspiracy to Interfere with Civil
20  Christine Mahfouz as individual and in her )     Rights U.S.C. §1983, 1985, 1986
    official capacity; Gail Goldberg as  )  8.  Actual Malice, Tortious Deceit, Fraudulent
21  individual and in her official capacity; )     Concealment [Cal. Gov. 822.2, U.S.C.1983]
    Michael LoGrande as individual and in )  9. Intentional Infliction of Emotional Distress
22  his official capacity; Anik Charron as )     [42 U.S.C. §1983]
    individual and in her official capacity; )  10. Deliberate Indifference, Corruption, Fraud
23  Marsha L. Brown as individual and in her )     [Cal. Gov. 822.2, 42 U.S.C. §1983]
    official capacity; Pedro Birba as individual )  11. Negligence (Cal.Gov. Code 815.A,820(A)
24  and in his official capacity; Van    )  12.  Negligent hiring, Training and Supervision
    Ambatielos as individual and in his  )     §815.2(A), §820(A);
25                                       )     DEMAND FOR JURY TRIAL

26

27

28

───────────────────────────────────────────────

Official capacity; Eleonor A. Williams as )
individual and in her official capacity; )
Glenda E. Martinez as individual and )
in her official capacity; Joyce L. Foster )
as individual and in her official capacity; )
Sophia Chang as individual and in her )
official capacity; Erica Teasley Linnick as )
an individual and in her official capacity )
and DOES 1 through 50, inclusive, )
)
      Defendants. )
)

COMES NOW Plaintiff, Fabiola Wright (WRIGHT) individually, for causes of action against Defendants the City of Los Angeles, a Charter City;  the City of Los Angeles Department of Building and Safety (LADBS); the City of Los Angeles Planning Department  (LACP) (collectively the CITY); and the CITY officials above named sued herein individually and in their official capacity.

WRIGHT brings this lawsuit for damages sustained as a result of government officials' misconduct, fraud, tortious deceit, fraudulent concealment and interference with her constitutional right to defend her property.

The CITY officials, supervisors, and commissioners' non-discretionary duties in this case were to ensure that all building permit applications submitted to the CITY complied with all applicable laws. They failed in their mandated duty and violated the law.  Defendants' conduct runs afoul of the Constitution's Due Process and Equal Protection Clauses.

The violations committed by the Defendants in this case have left WRIGHT without faith in the integrity, impartiality, and competence of the CITY's government, where she has learned that officials are more concerned with covering for the misconduct of their colleagues than in administering justice and protecting the rights of the people they serve. What is shocking about the violations committed against WRIGHT is that they were perpetrated by government officials with a moral and professional duty to be honorable and protect the safety and rights of the citizens.

2

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

1.   Jurisdiction is vested in this Court under 28 U.S.C. §1343(a)(3) and (4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983 and Sections 1331 and 1367(a).  Venue is proper in the Central District of California under 28 U.S.C. Section 1391(b).

## INTRODUCTORY ALLEGATIONS

2.   At all relevant times herein, WRIGHT is and was a resident at 3208 Viola Place in the City of Venice, incorporated to the City of Los Angeles, County of Los Angeles, State of California and over the age of eighteen (18) years.

3.   Plaintiff is informed and believes and thereupon alleges that Defendants the City of Los Angeles, a Charter City;  the City of Los Angeles Department of Building and Safety (LADBS), the City of Los Angeles Planning Department  (LACP) (collectively the CITY) is a charter city and municipal corporation, organized and existing under the laws of the State of California.

4.   Plaintiff is informed and believes and thereon alleges that all times relevant herein, Defendants  Vahe Sarkissian, Siavosh Poursabahian, Charles Boghoskhan, John Hyde, Christine Mahfouz, Gail Goldberg, Michael LoGrande, Anik Charron, Marsha L. Brown, Pedro Birba, Van Ambatielos, Elenore A. Williams, Glenda E. Martinez, Joyce L. Foster, Sophia Chang, Erica Teasley Linnick  are and were government officials and residents of the City of Los Angeles, County of Los Angeles, State of California.  Further, at all times relevant to the acts and omissions herein alleged, said government officials are and were officials and acted in the course and scope of the employment with the CITY.

5.   Plaintiff is informed, believe, and thereon alleges that CITY officials  individually and in their official capacities performing non-discretionary duties are legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberate indifference, intentional, willful or wanton misconduct in creating and otherwise causing the incidents, conditions and circumstances

COMPLAINT FOR DAMAGES

1   hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty

2   arising out of the matters herein alleged.

3        6.  Plaintiff is unaware of the true names and capacities of those Defendants names herein as

4   DOE Defendants 1 through 50.   Plaintiff will amend this complaint to allege said Defendants' true

5   names and capacities when that information becomes known to them.  Plaintiffs will seek leave to

6   amend this Complaint to set forth said true names and identities of the unknown named DOE defendants

7   when they are ascertained.

8        7.  Each of the Defendants' officials sued herein are sued as individuals and in their official

9   capacity.  Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein,

10  Defendants are at and at all times herein mentioned were, officers, officials, and/or employees of

11  Defendant the CITY and/or at all times mentioned herein were acting in the course and scope of their

12  employment with Defendant the CITY and are liable under the doctrine of respondeat superior pursuant

13  to Section 815.2 of the California Government Code.

14       8.  Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein,

15  Defendants' officials at all times herein mentioned were, employees of Defendant the CITY and were

16  responsible for implementing, promulgating, maintaining, enforcing policies, procedures, practices

17  under which the other Defendants committed the illegal or wrongful acts hereinafter complained of.

18  Plaintiff is also informed and believes, and thereon alleges, that at all times herein mentioned,

19  Defendants were responsible for the administration of the Los Angeles Department of Building and

20  Safety, the Zoning Department and the Los Angeles City Planning in selecting, hiring, training, and

21  supervising persons working for and within these departments.

22       9.  Plaintiff is informed, believes, and therefore alleges that, at all times herein mentioned, each

23  of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining

24  Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency,

25  employment and/or conspiracy and with the permission and consent of other co-defendants.

26

27

28

4

COMPLAINT FOR DAMAGES

10.   On November 26, 2007, a Claim for Damages was presented to the City of Los Angeles on behalf of Fabiola Wright, in substantial compliance with Government Code 945.6.  The Claim was denied.

## PRELIMINARY STATEMENT

11.   This case involves WRIGHT's, unsophisticated in the realm of building, zoning and planning regulations, great struggle to obtain justice and the CITY officials, asserting an undeserved mastery, determined to defeat her, in a case where the violation of the CITY's Ordinances and numerous building, zoning and planning laws were clearly seen by the knowledgeable.

12.   It involves officials' non-discretionary duties.  All officials, supervisors and commissioners ("officials") had the non-discretionary duty to ensure proper permit applications had been filed with the City.  The officials failed to proceed in the manner required by law and engaged in a conspiracy to stop WRIGHT from defending her property rights through intimidation, false information, fraudulent concealment, tortious deceit, and cover up.  The officials ganged up forming a huge giant against one citizen. Most property owners are unable to pay $300.00 to $450.00 per hour for a land use attorney. This leaves most property owners unrepresented and unable to defend their property rights.  The lucky ones who are granted the right to appeal are easily discouraged at the early stages of the appeal process by City Commissioners who defend the City's interests rather than the interests of the people they serve.

13.   This case involves the construction of a building considered a nuisance, a fire hazard, built for band playing, twenty three feet away from WRIGHT's bedroom, in a methane hazard site, under WRIGHT's big tree, two inches from WRIGHT's rear property line (Exhibit "1").

14.   The issues in the State Court involved the erroneous issuance of building permits.  The issues herein alleged are for misconduct, intimidation, concealment of key evidence, tortious deceit, intentional false representations, conspiracy, unfair biased decisions, intentional infliction of emotional distress, deprivation of due process and equal protection of the law.

5

COMPLAINT FOR DAMAGES

## FACTS AND PROCEDURAL BACKGROUND

15.   The City Council established Ordinance 175693, with an effective date of January 19, 2004. It provided in part that "no Building Permits or Certificates of Occupancies shall be issued without receiving an exemption and a Planning Director's signature or has been reviewed and approved in accordance with the Specific Plan Procedures of Los Angeles Municipal Code (LAMC) 11.5.7 and LAMC 12.20.2.1. (Exhibit "2")

16.   The City Council established Ordinance 168999 ,with an effective date of September 22, 1993.  It referred in part to "a review by the Director who shall grant approval" (Exhibit "2").

17.   The City Council established Ordinance 170555, with an effective date of January 14, 1995. It provided in part that "all application shall be submitted to the Planning Department in accordance with the procedures set forth in LAMC 11.5.7."  (Exhibit "2").

18.   On May 22, 2007, Shozo Yoshikawa at the LACP, Department of Transportation, issued an approval in violation of Ordinance 168999 requiring prior approval by the Director.

19.   On May 24, 2007, Official Emanuela Gutierrez at the LACP Zoning Department issued a Coastal Zone exemption ZA 2007 2484 CEX. The exemption was issued in error for minor work to an existing building.  There was no existing building at the site. The Coastal exemption violated the Ordinances.  The Planning Director did not approve the exemption  (Exhibit "3").

20.   On June 12, 2007,  LADBS issued Building Permit #07010-30000-02095 for the construction of a new building in violation of the CITY ordinances.  The Planning Director did not approved the building plans nor the building permit application  (Exhibit "4").

21.   At the beginning of July, 2007, WRIGHT discovered the new development adjacent to her rear property.  WRIGHT was alarmed because the foundation for the building was on property lines two inches from her fence clearly in violation of  LAMC 12.08C2 and LAMC 12.08C3 requiring 5 feet side setback and 15 feet rear setback.

22.   On or about July 15, 2007, WRIGHT called the LADBS complaining to one of the officials that the building was in violation of the LAMC.  WRIGHT requested an investigation.

6

23. On July 18, 2007, LADBS' Inspectors, Charles Boghoskhan and Mel Khachatourian, inspected the construction in progress adjacent to WRIGHT's rear yard. Inspector Charles Boghoskhan informed WRIGHT the building was legal and accused WRIGHT that she was taking six inches of land from her neighbors.

24. WRIGHT, alarmed by the inspector's statement, hired a land surveyor to do a property line survey. The findings of the survey determined Inspector Boghoskhan's statement was false. WRIGHT spent $1,200.00 on the property line survey.

25. WRIGHT began a multitude of attempts to stop a construction that was easily perceived to be in error by sending correspondence and making telephone calls to the Principal Inspector, John Hyde and other officials at the West LADBS. WRIGHT also visited the West LADBS and LACP several times attempting to stop the construction. The deliberate indifference of government officials towards WRIGHT was shocking.

26. On or about July 20, 2007, WRIGHT spoke by telephone to the Planning Director responsible for the area, Christine Mahfouz. WRIGHT informed the Director Christine Mahfouz that the construction for a new building was in progress on property lines adjacent to her property. Christine Mahfouz stated "I never allowed that." Christine Mahfouz told WRIGHT that she will communicate with the LADBS regarding the development and requested WRIGHT to call her back.

27. Meanwhile, WRIGHT continued her efforts to stop the construction and also began requesting an appeal. She contacted City Council Bill Rosendahl and Arturo Pina, Mr. Rosendahl's assistant in the Planning Department. She also contacted the Venice Neighborhood Council and continued making calls to Christine Mahfouz to no avail. The officials were not willing to assist her.

28. Unknown to WRIGHT, on August 13, 2007, the developers went to the LADBS to obtain a second Building Permit #07010-30001-02095 (Exhibit "5") for minor alterations to the new building which was two months into construction. The description of the work on this building permit and on the building plan were "to reflect a slot opening in masonry wall, to save a tree and revised increased distance of 6 inches to property lines".

7

29.   After the issuance of Building Permit #07010-30001-02095 on August 13, 2007, the developers went to the Planning Director, Christine Mahfouz, for the first time, to obtain an approval. The Planning Director, Christine Mahfouz, with prior knowledge that the building had not been authorized by the LACP, improperly, stamped, signed and approved the building plan and the building permit application for minor work.  She issued a Sign Off  DIR 2007 2474 VSO exempting the building from a City Planning permit (Exhibit "6").  The job description on the Sign Off deceptively described the work to be for the construction of a new garage contrary to the building permit application  #07010-30001-02095,  which described the work as "a slot opening in masonry wall, to save a tree and revised increased distance of 6 inches to property lines."   The Director, Christine Mahfouz,  intentionally concealed the number of the LADBS building permit application which was required to be placed on the job description section of the Sign Off and concealed the plot plan with the application number which was required to be placed at the top of the building plan.

30.   A meeting of the minds and agreement between the LACP and the LADBS' officials to deceive WRIGHT occurred on August 13, 2007.  The officials, in concert from that date, began a deception to make believe that the Planning Director had issued an approval to the first building permit application #07010-30000-02095 for the construction of a new building when in fact the approval on August 13, 2007 was to building permit #07010-30001-02095, for minor alterations to a building which had not been authorized by the LACP.

31.   The CITY officials throughout the case concealed the existence of building permit #07010-30001-02095 from all their documents, decisions, determinations. The LADBS Superintendent's Determination, the Zoning Investigator's report, the  Zoning Administrator Letter of Determination, and the CITY's Brief all jumped from building permit #07010-30000-02095 to #07010-30002-02095 (Exhibit "7").  The CITY officials throughout the case persistently alleged the Sign Off approved the first building permit application.  The CITY officials' intent was to confuse and deceive WRIGHT into believing that the Planning Director had approved the new building.

32.  On September 4, 2007, WRIGHT unable to pay the high cost of a land use attorney, obtained the assistance of a pro bono attorney, Robert S. Fink.  Mr.  Fink sent a letter to the Planning

COMPLAINT  FOR  DAMAGES

Director, Christine Mahfouz, requesting that construction cease until proper entitlements were obtained (Exhibit "8"). WRIGHT's request for due process and equal protection of the law was ignored by the planner Christine Mahfouz and the officials at the West LADBS.

33. On September 5, 2007, WRIGHT sent a letter by fax to John Hyde and Christine Mahfouz with an Ordinance attached. The letter advised Mr. Hyde and Christine Mahfouz that the building was in violation of the Ordinance. Inspector Charles Boghoskhan and Planner Christine Mahfouz telephoned WRIGHT within a few hours from receiving the faxed letter advising WRIGHT that the Ordinance did not apply to the project.

34. On or about September 12, 2007, WRIGHT called Christine Mahfouz requesting the right to appeal the permits. Mahfouz informed WRIGHT that the action was non-appealable and non-discretionary with no findings, and that her only remedy was to file a lawsuit against the City of Los Angeles and that she will lose.

35. On or about October 10, 2007, WRIGHT contacted the LADBS Commissioner's Office and spoke to one of the officials. WRIGHT informed the official her numerous requests to appeal the issuance of building permits were being denied. The official exclaimed "we live in America everyone has the right to appeal". The officer immediately called the Superintendent of the West LADBS, Siavosh Poursabahian, and an agreement was made for WRIGHT to take her appeal documents to Mr. Poursabahian for his consideration. WRIGHT appeared at the LADBS before Siavosh Poursabahian and handed him her appeal documents. After reviewing the documents for a few minutes he stated there were no violations and told her that she could not appeal the permits issued.

36. On or about October 20, 2007, WRIGHT wrote a letter to the head of the LADBS, Mr. Andrew Adelman, informing him that her requests to appeal building permits issued by the LADBS were being denied. WRIGHT received a telephone call within 42 hours after sending the letter from Mr. Siavosh Poursabahian who informed her that her appeal request had been granted by Mr. Adelman.

37. On October 23, 2007 and December 21, 2007, the LADBS issued three more Building Permits for the building without the approval from the Planning Director. Building permits #07010-

9

30002-02095, #07010-30003-02095,  and #07010-30004-02095 are in violation of the City Ordinance

requiring prior approval by the Planning Director before the LADBS issuance.

38.   WRIGHT continued her struggle to obtain the right to appeal the permits from the LACP by

writing correspondence and complaining to higher authorities, her actions angered many officials.

39.   On November 20, 2007, WRIGHT received a letter from the Chief of Zoning Michael

LoGrande in response to two letters she had sent to him (Exhibit "9"). The letter informed WRIGHT

that the building had been approved by the Sign Off issued on August 13, 2007.  Chief of Zoning,

Michael LoGrande,  knew this information was false.

40.   On November 26, 2007, WRIGHT filed Claim No. C08-2286 for Damages against the

CITY.  WRIGHT accused the government officials of "looking the other way" when deceptive

applications were submitted to the government agencies.

41.   WRIGHT also filed a Complaint with the City of Los Angeles Special Investigation Unit

for Fraud and Abuse.

42.   On January 7, 2008,  WRIGHT Claim for Damages against the City was denied.  WRIGHT

proceeded in good faith through the appeal process with the belief that justice would prevail.

43.   On January 23, 2008, the Planning Director Christine Mahfouz, with full knowledge that

the building had not been approved by Planning, improperly revised the Sign Off changing the job

description from a garage to storage.  One of WRIGHT's allegations was that the new construction

could not be for a garage because it was impossible for a car to enter the rear yard.

44.   The numerous letters, telephone calls, Complaint for Fraud and Abuse, and Claim for

Damages made by WRIGHT resulted in the LACP finally granting WRIGHT the right to appeal the

permits issued.

45.   On April 15, 2008, the LADBS appeal was heard by the Board of Building and Safety

Commissioners (BBSC).  Commissioners Marsha L. Brown, Pedro Birba, Van Ambatielos, Elenore A.

Williams heard WRIGHT's first appeal.  WRIGHT represented herself, In Pro Per, with the Pro Bono

assistance of Attorney Fink.   Mr. Adelman head of the LADBS cautioned WRIGHT as to her

accusations of fraud in the letters sent to the City Agencies. WRIGHT explained she believed that there

COMPLAINT FOR DAMAGES

had been fraud committed because the documents presented to the Departments were a misrepresentation of the facts. At the hearing WRIGHT's central issues were that the building was being used for band playing late into the night depriving her of sleep, that the building was unsafe, a fire hazard, and that the building had not been approved by the LACP. WRIGHT based her allegations on the information given to her by the Planning Director that she had not allowed the building and the fact that the developers did not file a permit application at LACP.   The appeal hearing was continued to May 20, 2008, to investigate the clearances issued by the LACP.

46.   On May 20, 2008, Wright, representing herself with the Pro Bono assistance of Attorney Fink, requested another continuance, this time at her request. WRIGHT alleged the permit application at LACP had not been approved, WRIGHT requested the continuance to allow the building application to be processed by the LACP in the manner required by law. WRIGHT argued before the BBSC that the permit from Planning comes before the LADBS permit that the plan checker had violated the code by not verifying if Planning had issued a Permit and that the permit obtained by the architect was illegal.

47.   Los Angeles Municipal Code 12.26A grants the LADBS the power to enforce the zoning ordinances of the City. The LADBS did not enforce the Ordinance in this case. The BBSC with full knowledge that the building had not been approved by the Planning Director, as required by the City Ordinance, improperly denied error. On May 29, 2008, the BBSC allowed the issuance of five (5) Certificates of Occupancy to an unauthorized building.

48.   On May 30, 2008, WRIGHT appeared before the City Council requesting the City Council to bring the matter before it for consideration pursuant to Section 245 of Article II of the Charter of the City of Los Angeles. The City Council ignored WRIGHT's request.

49.   On July 17, 2008, a hearing was held by the Zoning Administrator, Anik Charron, on behalf of the Director of Planning. Ten neighbors appeared in favor of WRIGHT. Four of the neighbors argued in her favor. Nobody appeared in favor of the developers except for their attorney.   The Zoning Administrator's non-discretionary duty was to ensure and decide if proper permits had been issued for the building. In her Brief to the Zoning Administrator WRIGHT alleged that no Permit Application had been filed by the developers at the LACP and that the building was in violation of yard setbacks. The Zoning Administrator took into consideration WRIGHT's allegation that the building was in violation of

11

LAMC 12.08C2 and LAMC 12.08C3 requiring 5 feet side and 15 feet rear yard setbacks.  The Zoning

Administrator, Anik Charron, made a determination that the setbacks had to comply with the code but

ignored WRIGHT's central allegation that no permit application had been filed at the LACP.  Six (6)

months later on *January 9, 2009,* the Zoning Administrator issued a Letter of Determination signed by

the Director of Planning, Gail Goldberg.  Their determination was that the LADBS did not err. This

decision was clearly unreasonable, not based on substantial evidence, unfair and biased in favor of the

City of Los Angeles.

50.   On March 18, 2009, Appellant appealed to the West Los Angeles Planning Commission

(WLAPC). WRIGHT again argued that the developers did not apply for a permit. The non-discretionary

duty of the WLAPC was to request from the CITY the permits issued by Planning in order to verify

WRIGHT'S allegations.

51.   The WLAPC failed to request if any permits had been filed at LACP for the building.

Despite the Commissions' acknowledgement that the building had no permit and that it was an unsafe

building, improperly located on property lines with methane pipes under WRIGHT's big tree used for

band playing, depriving WRIGHT of sleep, it sustained the determination of the Zoning Administrator

Anik Charron.  The decision of the WLAPC on April 14, 2009 was clearly unfair and biased in favor of

the City of Los Angeles.

52.   In early 2009, before the Writ of Mandate was filed with the court, WRIGHT appeared at

the LADBS to obtain copies of building permits, certificates of occupancy and to view the building

plans maintained on microfilm.   She obtained a copy of building plan # 07010-30001-02095 issued on

August 13, 2007, which had been carefully concealed by the City.  After reviewing this building permit

and viewing the building plans on microfilm, WRIGHT discovered for the first time that the building

plans issued on June 12, 2007 for the construction of a new building had not been stamped, signed and

approved by the Director of Planning. She discovered that there was only one building plan signed,

stamped and approved by the Planning Director on August 13, 2007, for minor work to an existing

building.  WRIGHT's prior allegations that the building had no permit from Planning had been based on

the statement by the Planner,  Christine Mahfouz, that "she had not allowed it" and the fact that no

permit application had been filed by the developers at City Planning.  On this day, WRIGHT for the first time had documentary evidence confirming her contention that building permit application 07010-30000-02095 issued on June 12, 2007, for the construction of a new building had no permit from Planning.

53.   In April, 2009, WRIGHT retained Mr. Fink to file a Writ of Mandate.  The Writ of Mandate was filed on April 22, 2007.  WRIGHT started incurring attorney's fees. On August 20, 2009, WRIGHT filed a Motion to allow the Building Plans maintained at the LADBS to be copied and presented to the Court to prove that the Ordinance had been violated.  The Court denied the Motion.

54.   On October 13, 2009, WRIGHT filed her Opening Brief.  On Page 11, Line 23-28, she alleged that Building Permit Application 07010-30000-02095 had not been approved by the Director.

55.   On December 18, 2009, the case was heard by Honorable David Yaffe in Department 86 at the Los Angeles Superior Court.  Mr. Fink alleged there was no permit from Planning for the building. The CITY responded that the Director's Sign Off issued on August 13, 2007, approved building permit # 07010-30000-02095 for the construction of the new building.  Mr. Fink refuted this allegation stating that the building required a permit and that the building had no permit from Planning.  On January 4, 2010 the trial Court ruled in favor of the City of Los Angeles.

56.   On February 18, 2010,  WRIGHT filed a Notice of Appeal with the Second Appellate District, Second Division.  WRIGHT in her Opening Brief, Page 7 made the Court aware of the CITY's intentional concealment of building permit #07010-30001-02095 throughout the case.  The CITY in response was forced to mention this building permit for the first time in their Brief, of which this Court may take judicial notice.   At the time this Complaint was filed an appellate decision had not been made.

### Count One

### Violation of the Fourteenth Amendment [42 U.S.C. §1983]

### Unequal Treatment Compared to Others Similarly Situated

57.   Plaintiff adopts and re-avers paragraphs 1 through 56 and 64-108 as fully set forth herein, and further states:

58. The CITY officials' ongoing campaign of adverse actions undertaken by their motivation to retaliate against WRIGHT are clear in this case. WRIGHT believes and herein alleges the CITY officials retaliated against her for having exercised her rights to defend her property by complaining, sending numerous letters and making numerous calls accusing the officials of "looking the other way while deceptive applications were filed".

59. All property owners in the area at issue desiring to develop their property are required by law to first go to the LACP before the Director of Planning to file an application for a permit. The Director of Planning has the initial decision making authority to decide on an application. WRIGHT was not provided with same protection of the law that all property owners in this area enjoy. In this case the Director was bypassed. WRIGHT made the officials aware at the beginning of the construction that the officials failed to proceed in the manner required by law. The officials' duty was to stop the project which was in early construction and process the application according to the law. This action would have provided WRIGHT with due process and equal protection of the law.

60. WRIGHT's attorney sent a letter requesting the development to cease until proper entitlements were obtained. WRIGHT was denied the right to defend her property. The CITY subjected her to more than three years of anguish, economic hardship, and deprived her of peace and quiet enjoyment. WRIGHT could not afford the high cost of a land use attorney, Attorney Fink as a pro bono attorney provided minimal assistance. She was forced to spend time researching and trying to decipher how the developers had manipulated the building permit process. WRIGHT was intentionally treated differently from others similarly situated, there was no rational basis for the difference in treatment. No rational person could regard the circumstances between parties different enough to justify differential treatment on the basis of a legitimate governmental policy, the officials did not act by mistake. WRIGHT was victim of a lawless campaign to stop her from complaining in a case where the violations of the City Ordinances and City's codes are clear. The CITY officials used the badge of their authority to violate WRIGHT's constitutional rights through intimidation, intentional misrepresentations, concealment and tortious deceit.

14

61.   The public officials inflicted a cost of burden on WRIGHT without imposing it on those who are similarly situated, and did so without any conceivable basis other than a wholly illegitimate motive.  The CITY intentionally treated WRIGHT differently from those property owners who desire to develop their property by not requiring the developers in this case to file the required permits at the LACP.  The CITY officials acted in an abusive and irrational manner by refusing to process the permit as required by law.  WRIGHT was deprived of protection of the law enjoyed by others similarly situated.  The CITY's actions did not satisfy the minimal level of substantive reasonableness.

62.   The facts alleged above are part of the customs, practices, policies and decisions of the LADBS and LACP, including but not limited to the following:

    a.   Using intimidation and false representations with the intention to stop anybody from complaining;

    b.   Refusing to stop construction that is easily perceived to be in violation of the law;

    c.   Ignoring legitimate complaints and rushing the construction to completion with the belief that once it is completed the aggrieved will have no remedies;

    d.   Decision makers make biased decisions in favor of the City, leaving the citizens unrepresented without any protection from those whose job is to enforce the City's laws and protect the interests of the citizens they serve;

    e.   Officials and Commissioners actions are based on the knowledge that the only check on their behavior is expensive and complicated appellate litigation and knowing that most individuals can neither afford nor comprehend these appeals;

    f.   Refusing to supervise, reprimand, and/or discipline officials who engage in misconduct contrary to the laws, rules and regulations of the City;

    g.   Failing to enforce the laws, rules, regulations and procedures thereby denying Plaintiff and similarly situated citizens equal protection of the laws and meaningful and just decisions by decision makers;

    h.   Inadequate training and supervising employees of the government entity, Defendants herein, with respect to illegal construction in the City which is easily perceive to be in error;

15

i.   Tacitly approving of officials using their power and position to interfere with citizen's rights.

## Count Two

### Deprivation of Rights Under Color of Law
### [42 U.S.C. §1983] §1985

63.   Plaintiff adopts and re-avers paragraphs 1 through 62 and 66 through 108 as fully set forth herein, and further states:

64.   Defendants willfully deprived WRIGHT from those rights secured and protected by the Constitution.  The CITY officials, within the bounds and limits of their authority and acting in the performance of their official duties, acted unlawfully.  The City Ordinance was clear and the construction was easily perceived to be in violation of the law.  The duty of the officials and supervisors was to comply with the law and to conduct an investigation.  The investigation would have determined that the construction in progress was in violation of City Ordinance.  The Commissioners' duty was to issue a ruling that was fair and impartial.  The officials failed to proceed in the manner required by law and opted to misrepresent, deceive and ignore WRIGHT's legitimate allegations.  The unlawful actions of the officials deprived WRIGHT of her constitutional right to defend her family from harm and her property from damage.

## Count Three

### U.S.C. Title 42 Sec. 1983, 1981

### Violation of Equal Right Protection under the Law

65.   Plaintiff adopts and re-avers paragraphs 1 through 64 and 76 through 108 as fully set forth herein, and further states:

66.   The Director of Planning was bypassed thereby depriving WRIGHT to make and give evidence, and to the full and equal benefit of all laws and proceedings as is enjoyed by all citizens.  The CITY officials opted to intimidate, misrepresent, conceal and confuse the case.  The CITY officials' actions caused WRIGHT mental anguish.  The officials' actions were designed, by collusive covert manipulation and intimidation to induce WRIGHT to cease her legal actions.

16

67.  Inspector Charles Boghoskhan knew the information he was giving WRIGHT stating she was taking six inches of land from the neighbors was false.  He maliciously intended to intimidate WRIGHT.  Inspector Boghoskhan accused WRIGHT erroneously, with the intention to cause plaintiff anxiety and mental torment.

68.  The Superintendent of West Los Angeles Building and Safety, Sia Poursahabian, had a non-discretionary duty to ensure the building permits issued by his department complied with all applicable law and when presented with the request to appeal permits issued, he had the duty to investigate, make a just determination and stop the project.  Poursabahian knew when WRIGHT appeared before him with her appeal documents that the building permits issued by his department were in violation of the Ordinance.  He intentionally denied WRIGHT due process and equal protection of the law.

69.  The Planning Director, Christine Mahfouz non-discretionary duty was to ensure proper permit applications had been filed.  Mahfouz, had the authority to stop the construction and process the applications as required by law.  Instead, Christine Mahfouz maliciously and improperly issued an approval for minor work on August 13, 2007 to a building she knew had not been approved by Planning.  Additionally, Mahfouz denied WRIGHT the right to appeal the permits issued, provided her with false information and concealed important key evidence.  Mahfouz's intent was to intimidate, confuse and cause injury, specifically, when she stated that WRIGHT's remedy was to sue the City of Los Angeles and that she will lose.  WRIGHT had a clear right to the performance of the duty sought to be compelled.  The planner had no discretion with respect to the performance of that duty.

70.  The officials at the LACP and LADBS, in concert, conspired against WRIGHT to deceive WRIGHT into believing the approval by the Director was to the first LADBS building permit application when in fact the approval issued was to the second building permit allowing minor work to a building which had not been approved by Planning.

71.  The Board of Building and Safety Commissioners Marsha L. Brown, Pedro Birba, Van Ambatielos, Elenore A. Williams,  individually and in concert, improperly and maliciously denied error and allowed the issuance of five Certificates of Occupancy to a building they knew had no legal permit thereby interfering  and depriving WRIGHT of due process and equal protection of the law.

17

72.   Mr. LoGrande as Chief of Zoning, expert in these matters, wrote a letter clearly intended to stop WRIGHT from complaining.  Mr. LoGrande knew the letter contained false information.  In creating this letter the Chief of Zoning was required to consider the five building permits issued by the LADBS approving eight building plans for the construction of the building.  In considering the first building permit application #07010-30000-02095  issued on June 12, 2007, Mr. LoGrande would have reasoned that this building permit application had no prior approval by the Director of Planning, there was no documentary evidence verifying that an approval by the Director had been issued.   In considering the second application #07010-30001-02095,  issued by the LADBS on August 13, 2007, he would have reasoned that this building permit application approved by the Director of Planning was issued for minor work to an unauthorized building.  Chief of Zoning, Michael LoGrande, acting individually or in concert maliciously and arbitrarily interfered with WRIGHT's due process and equal protection clause by misrepresenting the project had been approved by the Director when in fact the new building had not been approved.

73.   The Zoning Administrator Anik Charron, and Gail Goldberg, experts in the field of zoning and planning, also knew the first building permit application issued on June 12, 2007 by the LADBS was in violation of the Ordinance.  Defendants individually or in concert acted maliciously and arbitrarily when they denied error on January 9, 2009 interfering with WRIGHT due process and equal protection clause.

74.   The West Los Angeles Planning Commissioners Glenda E. Martinez, Joyce L. Foster, Sophia Chang, and Erica Teasley Linnick,  despite their acknowledgement that the building was unsafe and improperly placed on property lines, sustained the determination of the Zoning Administrator, which was arbitrary, confusing and unreasonable.  There was no substantial evidence to support the findings.  The Commissioners decision was clearly biased in favor of the CITY.  The Commissioners unfairly interfered with WRIGHT due process and equal protection of the law.  The decisions of the CITY officials not only injured WRIGHT but also damages the CITY of much needed revenue by exempting these types of buildings from permits' fees.

### Count Four

### Violation of the Fourteenth Amendment

### Substantive Due Process Claim

75.  Plaintiff adopts and re-avers paragraphs 1 through 74 and 81 through 108 as fully set forth herein, and further states:

76.  The CITY officials know that the only check on their behavior is expensive and complicated appellate litigation and that most property owners can neither afford nor comprehend these appeals.  This leaves officials free to allow violations and free to violate the law as clearly demonstrated in this case.

77.  The CITY officials knew the City Ordinances.  On September 5, 2007,  when WRIGHT sent a letter to Inspector John Hyde and Christine Mahfouz enclosing Ordinance 174999 advising them the building was in violation of the Ordinance requiring15 feet rear setback, Inspector Charles Boskonian and Christine Mahfouz called WRIGHT within a few hours to tell her she was incorrect that the Ordinance did not apply.  The CITY officials knew the Ordinance applicable to this case.  The CITY officials asserted an undeserved mastery over WRIGHT who was totally ignorant about building, zoning and planning matters.  The CITY officials took advantage of this undeserved knowledge to intimidate, misrepresent, conceal or deliberately ignore WRIGHT. This constitutes an abusive behavior by officials towards the citizens they serve.

78.  The CITY had the obligation at the beginning of the construction to process the building permits in the manner required by Ordinance 175693.   The CITY's failure to enforce the Zoning Ordinance and the zoning code was a violation of WRIGHT's property rights.  The Official s' actions "shock the conscience of decent citizens."   Substantive due process bars "certain arbitrary" wrongful government actions.  WRIGHT had a protected interest and the government arbitrarily and capriciously interfered with that interest.

79.  Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

### Count Five

### Violation of the Fourteenth Amendment

### Deprivation of Procedural Due Process

80.   Plaintiff adopts and re-avers paragraphs 1 through 79 and 85 through 108 as fully set forth herein, and further states:

81.   THE CITY failed to process the Building Permits in a manner required by law.  The fourteenth Amendment prohibits a state from depriving a party "due process of law".  The CITY harmed WRIGHT without following the clear established law.   Procedural due process ensures that a state will not deprive a party without using certain procedures.

82.   Procedural due process requires that no one be denied a liberty or property interest without both notice and the opportunity to be heard. The CITY officials' actions denied WRIGHT the use of established procedures, such an action is equivalent of denying WRIGHT and her neighbors an opportunity to be heard.  The hearing before the Zoning Administrator Anik Charron, after the CITY had unlawfully issued five (5) Certificates of Occupancy, was a farce pretending to give WRIGHT due process, an opportunity to be heard.  The Zoning Administrator did not hear one word.  All evidence given by neighbors and the evidence kept in the file at LACP were in favor of WRIGHT.  The Zoning Administrator had already determined the outcome before the hearing started.

83.   The building at issue required the developers to seek variances, to notify the neighbors and a public hearing.   Had WRIGHT and her neighbors been notified and a public hearing had been held the building would not have been allowed by the neighbors because it is a nuisance. WRIGHT and her neighbors were deprived of due process and the right to a fair and impartial hearing.  The intentional concealment of building permit application  #07010 3001 02095 obstructed justice and detrimentally injured WRIGHT.

COMPLAINT FOR DAMAGES

**Count Six**

**U.S.C. Title 42 Sec. 1985**

**Unfair Trial Biased Decisions in Favor of the City of Los Angeles**

84.   Plaintiff adopts and re-avers paragraphs 1 through 83 and 87 through 108 as fully set forth herein, and further states:

85.   The law in this case is clear and fair. The City officials knew and intentionally chose to ignore WRIGHT's allegations and also ignored the City Ordinances and laws.  The determinations by the City Commissioners, the Zoning Administrator and the Director of Planning were biased in favor of the City of Los Angeles interfering with WRIGHT's constitutional rights to defend her family from harm and her property from damage.  The appeal system is designed to hear cases and give equal rights to the poor and to the rich with no other goal than to give each citizen a fair hearing. WRIGHT was denied fair and impartial appeal hearings and a fair and impartial trial.  The CITY officials knew there was no proper permit and capriciously and arbitrarily denied error.  Achieving justice is the function of law. Clear allegations of law violations were made by WRIGHT and ignored by the CITY officials and the State Court.

**Count Seven**

**Title 18 US.C. Section 241 U.S.C. Title 42 Sec. 1985, 1986.**

**Conspiracy to Interfere with Civil Rights**

86.   Plaintiff adopts and re-avers paragraphs 1 through 85 and 90 through 108 as fully set forth herein, and further states:

87.   It is unlawful for a group of officials to conspire among themselves, to conceal wrongdoing and misconduct.  In this case the CITY officials acted in concert to injure WRIGHT. The officials intentionally intimidated, misrepresented, concealed key evidence and covered up the violations with the intent to stop her from defending her family from harm and her property from damage.  The CITY officials, in concert, concealed the existence of the LADBS building permit application 07010-30001-

21

02095 in order to deceive WRIGHT in to believing the Director had issued a permit. The CITY officials knew this to be false.  The CITY officials should have known the laws which govern their conduct. A reasonable person knows what she or he is doing is unlawful.

88.   WRIGHT was deprived of her rights of equal protection of the laws and equal privileges and immunities under the laws; the government officials purpose was to prevent and hinder the constituted authorities of the State from giving and securing WRIGHT the equal protection of the laws; the government officials engaged  and caused to be done acts in furtherance of the object of such conspiracy, whereby WRIGHT was injured in her person and property, and deprived of having and exercising her right and privilege as a citizen of the United States.  WRIGHT was injured and deprived of her constitutional rights.

**Count Eight**

**Violation of the Fourteenth Amendment**

**Malice, Fraud, Tortious Deceit, Tortious Interference,**

**Fraudulent Concealment Cal. Gov. 822.2, U.S.C. 1983.**

89. Plaintiff adopts and re-avers paragraphs 1 through 88 and 99 through 108 as fully set forth herein, and further states:

90.   At the beginning of  2009, when WRIGHT visited the LADBS, she was provided with a copy of building permit 07010 30001 02095 and also viewed the building plans maintained in microfilm in reel J31391220 for building permit 07010 30000 02095 and in reel J32221239 for 07010 30001 02095.  At this time she discovered the fraudulent concealment.

91.   WRIGHT discovered for the first time that there was only one building plan stamped, signed and approved by the Director.  This building plan was part of building permit 07010 30001 02095 for minor work to an existing structure.  It became clear to her that the first building permit 07010 30000 02095 for the construction of a new building had not been approved by the Director as required by the Ordinance.

22

92.   WRIGHT had requested public records several times from the LADBS and LACP, yet this building permit had been excluded from records.  The CITY officials knew a wrong had occurred and had a fixed purpose to conceal the wrong and did conceal the wrong.  The officials' active suppression of the truth and their failure to disclose the truth is clear.

93.   After Planner Christine Mahfouz contacted the LADBS there seemed to have been a meeting of the minds, an agreement between all officials to deceive, to make believe that Planning had issued a permit for the new building when in fact Planning had not approved the construction of the new building.

94.   The CITY officials' concealment of building permit 07010 30001 02095 throughout the appeal process as shown in the documents attached as Exhibit 7 confirm the intent of the officials which was to make WRIGHT believe that the Director had approved building permit 07010 30000 02095.

95.   The concealment of this building permit deprived WRIGHT of fair hearings.  WRIGHT did not have documentary evidence, what she had in her possession to prove her case, among other documents, was the building permit issued on June 12, 2007 and the Sign Off issued on August 13, 2007.  The CITY officials persistently alleged the Sign Off approved the June 12, 2007 building permit.  The CITY officials knew this information was false.

96.   Defendants acted with the intent to inflict injury and with the realization that an injury was substantially certain to result from their conduct.  The Commissioners with malice used the appeal process to accomplish a purpose for which the appeal process was not designated.

97.   The presence of malice and the intention to deprive a person of his civil rights is wholly incompatible with the judicial function.  When CITY officials act intentionally and knowingly to deprive a person of her/his constitutional rights the official exercises no discretion or individual judgment, the official acts no longer as a government official but as a "minister" of his/her own prejudices.

### Count Nine

### Violation of the Fourteenth Amendment

### Intentional Infliction of Emotional Distress

98.   Plaintiff adopts and re-avers paragraphs 1 through 97 and 102 through 108 as fully set forth herein, and further states:

99.   The City Officials' false representation of facts with knowledge that the representations were false injured WRIGHT.  Defendants had knowledge of the violation and failed to remedy it by processing the application in the manner required by law and by taking into consideration WRIGHT's allegations.  WRIGHT was subjected to more than three years of appeals and litigation and economic hardship incurring attorneys' fees and deprived from life's pleasures and quiet and peaceful enjoyment.  These could have been prevented if the officials had performed their duties as is required by law.

100.   The CITY's concealment of key evidence injured WRIGHT.  The conduct of the Defendants was so outrageous that it exceeds all bounds of common decency usually tolerated by a civilized society.   WRIGHT suffered, among other things,  mental anguish, sleep loss, depression and irritability for more than three years.  The injuries were proximately caused by the CITY officials' negligent conduct and willful violation of the law.

### Count Ten

### Violation of the Fourteenth Amendment

### Deliberate Indifference

101.   Plaintiff adopts and re-avers paragraphs 1 through 100 and 104 through108 as fully set forth herein, and further states:

102.   The CITY officials acted with conscious disregard for the obvious consequences of their actions. It is impossible to say with any certainty what decision the Commissioners may have reached in the absence of deliberate indifference of WRIGHT's legitimate allegations.  Each of the defendants caused, and is legally responsible for the above-described unlawful conduct and resulting injuries by,

24

among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; and by failing and refusing with deliberate indifference WRIGHT's request for justice.

**Count Eleven**

**Negligence**

**Gov. Code 815.2(A), 820(A)**

103.   Plaintiff adopts and re-avers paragraphs 1 through 102  and 107 through 108 as fully set forth herein, and further states:

104.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to, negligent supervision, negligently failing to determine if the building at issue complied with all applicable law, negligently failing to stop a construction that was in clear error and unsafe for WRIGHT and her family.

105.   As a proximate result of the above-mentioned conduct of Defendants, and each of them, WRIGHT suffered for more than three years severe mental anguish, physical and economic damages.

**Count Twelve**

**Negligent Hiring, Training and Supervision**

**Cal.Gov. 815.2(A)820(A)**

106.   Plaintiff adopts and re-avers paragraphs 1 through 105 as fully set forth herein, and further states:

107.   Plaintiff is informed and believes and thereon alleges that beginning on or before May 23, 2007, the CITY, negligently hired, trained, supervised, employed and/or managed their Defendants' officers in that the CITY, knew or, in the exercise of reasonable diligence, should have known, that Defendants violated the law thereby violating civil rights in a manner that demonstrates callous disregard for the rights and safety of civilian citizens through misrepresentations and intimidation the

25

1  CITY officials were prone to conspire among themselves to obfuscate WRIGHT's investigatory

2  activities and prone to falsify, distort and/or cover up the errors committed by the CITY officials.

3      108.   As a proximate result of the above-mentioned conduct of Defendants, and each of them,

4  WRIGHT suffered extreme pain and severe mental anguish, as well as mental and physical damage and

5  injury to her mind and body.

6      WHEREFORE, Plaintiff hereby demands that a jury by empanelled for the trial of this matter.

7  Plaintiff prays for judgment against all Defendants, and each of them, as follows:

8      1.  Plaintiff seeks an award of attorneys' fees and costs incurred in pursuing the claims herein,

9          pursuant to 42 U.S.C. § 1988.

10     2.  Plaintiff  seeks damages in the amount of $400,000.00 from the CITY and $100,000.00 from

11         each CITY official;

12     3.  Plaintiff seeks sanctions and exemplary and punitive damages in the amount of $400,000.00

13         from the CITY, and $100,000.00 from each CITY official sufficient to deter future

14         misconduct by officials against citizens. This case involves the safety of buildings and safety

15         of citizens.  It is the duty of the Court to impose sanctions in the case of misconduct

16         sufficient to deter misconduct.  A failure to apply meaningful sanctions allows abuse to go

17         unpunished, and invites its continuation.  Minimal sanctions against defendants have no

18         significant deterrent effect. The abusive misconduct of the city officials will be deterred by

19         the granting of substantial exemplary and punitive damages to the aggrieved

20     4.  Plaintiff seeks $400,000.00 to recover damages for injury to her person or property, or

21         because of the deprivation of any right or privilege of a citizen of the United States, by any

22         act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

23     5.  For costs of suit incurred herein;

24     6.  For such other and further relief as the Court deems just and proper.

25  Dated:  01/04/11                                    LAW OFFICES OF ROBERT S. FINK

26

27

28                                                     Robert S. Fink

                                    26

## JURY DEMAND

Plaintiff, FABIOLA WRIGHT, individually hereby demands that a jury be empanelled for the trial of this matter.

Dated:  01/04/11

Respectfully submitted;
LAW OFFICES OF ROBERT S. FINK
A Professional Corporation

Robert S. Fink
Attorney for Plaintiff, Fabiola Wright

27

COMPLAINT FOR DAMAGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Fabiola Wright, individually | City of Los Angeles, et al., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>LAW OFFICES OF ROBERT S. FINK, CSB#65787<br>6404 Wilshire Boulevard, Suite 1001<br>Los Angeles, California 90048<br>Tel: (323)653-3030 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☑ MONEY DEMANDED IN COMPLAINT: $In an amount yet to be ascertained

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11    0158

| FOR OFFICE USE ONLY: | Case Number: _____ |
|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case.
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
       **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   1 - 4 - 11

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Law Offices of Robert S. Fink, CSB#65787
6404 Wilshire Boulevard, Suite 1001
Los Angeles, California 90048
Tel (323)653-3030
Fax (323)655-8182

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fabiola Wright, individually | CASE NUMBER |
| PLAINTIFF(S) | CV11 0158 AHM (RZx) |
| v. | |
| City of Los Angeles, et al., | |
| *see attached* | SUMMONS |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): City of Los Angeles, et al., _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Robert S. Fink _____, whose address is 6404 Wilshire Boulevard, Suite 1001, Los Angeles, California 90048 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JAN - 6 2011

By: _____ CHRISTOPHER POWERS

Deputy Clerk

*(Seal of the Court)*

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

City of Los Angeles, a Charter )
City; City of Los Angeles Department )
of Building and Safety; City of Los )
Angeles Planning Department; )
Vahe Sarkissian , as individual and official )
capacity, Siavosh Poursabahian, as )
individual and in his official capacity; )
Charles Boghoskhan, as individual and in )
his official capacity; John Hyde as )
individual and in his official capacity; )
Christine Mahfouz as individual and in her )
official capacity; Gail Goldberg as )
individual and in her official capacity; )
Michael LoGrande as individual and in )
his official capacity; Anik Charron as )
individual and in her official capacity; )
Marsha L. Brown as individual and in her )
official capacity; Pedro Birba as individual )
and in his official capacity; Van )
Ambatielos as individual and in his )
Official capacity; Eleonor A. Williams as )
individual and in her official capacity; )
Glenda E. Martinez as individual and )
in her official capacity; Joyce L. Foster )
as individual and in her official capacity; )
Sophia Chang as individual and in her )
official capacity; Erica Teasley Linnick as )
an individual and in her official capacity )
and DOES 1 through 50, inclusive, )
)
)
                                    Defendants. )
                                                )
———————————————————— )

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV11- 158 AHM (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
    **312 N. Spring St., Rm. G-8**
    **Los Angeles, CA 90012**

[ ] **Southern Division**
    **411 West Fourth St., Rm. 1-053**
    **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
    **3470 Twelfth St., Rm. 134**
    **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.