JS-6; O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:   Attorneys **NOT** Present for Defendants:

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

## I.   INTRODUCTION

Plaintiff Fabiola Wright ("Plaintiff") brings this civil rights action against the City of Los Angeles ("City"), the Los Angeles Department of Building and Safety ("LADBS"), and the City of Los Angeles Planning Department ("LACP"). Plaintiff also includes as Defendants the following city officials in their individual and official capacities: Charles Boghoskhan (an LADBS inspector), Siavosh Poursabahian (the Superintendent of West LADBS), Michael Lo Grande (the Chief of Zoning), Anik Charron (the Zoning Administrator), and Christine Mahfouz (the City Planning Director) (collectively "Defendants").

Plaintiff alleges twelve causes of action. Although Plaintiff's Complaint is confusing, the gist appears to be that Defendants violated her 14th Amendment rights to equal protection and due process in the course of erroneously affirming the issuance of building permits for a structure on her neighbor's property. She also includes some state law claims, including under the California Government Code.

Before the Court is Defendants' motion to dismiss the complaint or, in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

alternative, motion for more definite statement.[1] The Court finds that the action is barred by res judicata and therefore GRANTS the motion to dismiss.[2]

## II. BACKGROUND

This action arises out of a dispute between neighbors.[3] In 2007, Plaintiff's neighbors, Robert and Carol McNeill ("McNeills"), received approval from the City to build a 201 square foot structure in their yard. Plaintiff considers the structure an "eyesore" that has diminished her property values. (Def. RJN. Exh. 9, p. 4.) The structure allegedly violates various ordinances and zoning regulations because, among other things, it is too large, is located two inches from Plaintiff's property line, is used for "band playing," and is a safety hazard. (Compl. ¶ 13.)

When Plaintiff first noticed in July of 2007 that the McNeills were building the structure, Plaintiff asked LADBS to investigate. (Compl. ¶ 22.) Defendant Charles Boghoskan, an LADBS inspector, allegedly visited the property and not only found that the structure was legal but falsely accused Plaintiff of taking six inches from the McNeills's property.[4] (Compl. ¶ 23.) Plaintiff claims that what followed was a series of actions from Defendants designed to cover up their erroneous approval of the structure.

### A. The Building Permits

The record reflects that LADBS issued five building permits relating to the structure. The first permit authorized the building's construction ("master permit"). The

---

[1] On June 26, 2011, Plaintiff filed a reply to Defendant's reply to her opposition. Dkt. No. 33. Under Local Rule 7-10, responses to replies may not be filed without leave of court. As such the Court has not considered Plaintiff's June 26 reply in ruling on this motion.

[2] Dkt. No. 28.

[3] Unless otherwise noted, the following facts are taken from Plaintiff's Complaint and the California Court of Appeal's opinion regarding Plaintiff's petition for writ of mandamus, attached as Exhibit 9 to Defendant's Request for Judicial Notice ("RJN").

[4] Later, Plaintiff spent $1,200 on a property line survey that determined Boghoskan was incorrect about the six inches. (Compl. ¶ 24.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

remaining four permits authorized various modifications to the structure and a zoning reclassification. (Comp. Exhs. 4, 6; Def. RJN Nos. 1-3.)

According to Venice Coastal Specific Plan Ordinance 175,693 ("Specific Plan Ordinance"), building permits may not be issued unless a City Planning Director issues an accompanying "sign-off" or a signature of approval.[5] Plaintiff alleges that there was never a sign-off for the main permit, and therefore the structure was never authorized. As support for this allegation, Plaintiff notes that although there are five permits, there is only one sign-off from the City Planning Director, Defendant Christine Mahfouz. The date reflected on the sign-off is not the same as the date of the *first* master permit but instead matches the date of the *second* building permit, which merely authorized minor alterations to the structure. (Compl. ¶ 30.) In addition, when Plaintiff first contacted Mahfouz about the structure by phone (prior to the date of the sign-off), Mahfouz told Plaintiff she had never authorized it. (Compl. ¶ 26.) Based on these facts, Plaintiff claims that the first building permit, which authorized the structure itself, is invalid.

### B. Plaintiff Files Two Administrative Appeals

Plaintiff appealed the legality of the building permits to two administrative agencies, the Board of Building and Safety Commissioners ("BBSC")[6] and LADBS. The issue before the BBSC was whether the 201 square foot structure had been properly classified under the "U-1 Occupancy Group" as an accessory storage building. ("U" stands for Utility). (Def. RJN, Exh. 9, p. 8.) If so, then the size of the structure was permissible because under the California Building Code and the Los Angeles Municipal Code, Group U buildings may be up to 1,000 square feet. (Def. RJN, Exh. 9, p. 9.) The

---

[5] Ordinance 175,693 states in relevant part, "No demolition, grading, building permit or certificate of occupancy shall be issued for any Venice Coastal Development Project unless the Venice Coastal Development Project has received a Venice Coastal Specific Plan Exemption, a Planning Director signature on the Building Permit Application Clearance Summary Worksheet, or has been reviewed and approved in accordance with the Specific Plan Procedures of LAMC Section 11.5.7, Section 7 of this Specific Plan and the Coastal Development Provisions of LAMC Section 12.20.2.1." (Ordinance No. 175,963 section 8, Effective January 19, 2004.)

[6] Although Plaintiff initially named BBSC and the individual BBSC commissioners as Defendants in this action, Plaintiff has since voluntarily dismissed them from the case. (Dkt. 73.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

issue before LADBS was whether the location and size of the structure complied with the law. (Def. RJN, Exh. 9, p. 5.) In 2008, both agencies found that the structure was legal and properly classified and affirmed LADBS's issuance of the building permits. (Def. RJN, Exh. 9, p. 5.)

  Plaintiff appealed the LADBS decision approving the location and size of the structure to the LACP Zoning Administrator, Defendant Anik Charron. (Compl. ¶ 49.) On January 9, 2009, Charron affirmed the LADBS decision, noting that although it was apparent that the McNeills had initially misrepresented the structure as a garage instead of a storage shed in their building permit application, the structure nonetheless was "in compliance with applicable location regulations for accessory structures . . . ." (Def. RJN, Exh. 9, p. 12.) Plaintiff appealed again to the West Los Angeles Area Planning Commission ("WLAAPC"), which sustained Charron's decision on April 14, 2009. (Compl. ¶ 50.) It appears that before the BBSC, Charron, and the WLAAPC made their determinations, Plaintiff was afforded an opportunity to present her case at public hearings. (Def. RJN, Exh. 9, pp. 4-6.)

  Plaintiff claims that at each level of her administrative appeals, she argued that even if LADBS had approved of the structure, Defendants Mahfouz and LACP had not authorized the building permits, as was required by the Specific Plan Ordinance. (Compl. ¶¶ 45, 46, 49, 50.) At the time of her administrative appeals, however, Plaintiff apparently lacked documentary evidence to support her argument because Defendants had allegedly engaged in a conspiracy to conceal the existence of the second building permit from her. (Compl. ¶56.) Although Plaintiff's Complaint is difficult to understand, her theory appears to be as follows: Plaintiff was not aware that the structure had five building permits when she first filed her administrative appeals with the BBSC and LADBS. (Compl. ¶ 52; Opp. 7.) Throughout the administrative process, Defendants only mentioned the first and third permits. (Compl. ¶ 31, Exh. 7.) It was not until early 2009 that Plaintiff went to LADBS to obtain copies of the permits and discovered all five permits.[7] (Compl. ¶¶ 29, Opp. 7.) Attached to the second building permit was two

---

  [7] Plaintiff does not specify exactly when she discovered the permits and building plans at LADBS. She states in the Complaint that she made the discovery in early 2009, but in her Opposition, she states that she discovered the documents shortly after the public hearing in her BBSC appeal, which occurred in 2008. (Compl. ¶ 52; Opp. 7.) Regardless, it appears that Plaintiff discovered the documents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

building plans, both of which had been stamped and signed by Defendant Mahfouz on August 13, 2007.[8] (Opp. 8.) Attached to the first building permit (the master permit) was five building plans, none of which had been stamped or signed. (Opp. 8.) In addition to these documents, Plaintiff discovered that Mahfouz had issued a general sign-off pursuant to Ordinance 175,693. (Opp. 8, Compl. Exh. 6.) Although the sign-off did not specifically link itself to a building permit, it was dated August 13, 2007, the same date as the second building permit.

Plaintiff alleges that Defendants intentionally concealed these documents from her to prevent her from proving that the sign-off Mahfouz had issued on August 13 was for the *second* building permit, not the first master permit. (Compl. ¶ 70.) Defendants' alleged concealment prevented Plaintiff from introducing documentary evidence at the administrative hearings to prove that Mahfouz and LACP had never signed off on the structure. Instead, the only evidence Plaintiff could present was her own testimony that Mahfouz had told her over the phone that she had not authorized the structure. (Compl. ¶ 26.)

### C. Plaintiff's State Court Actions

Having been unsuccessful at the administrative level, Plaintiff filed a Petition for Writ of Administrative Mandate in Superior Court on April 22, 2009. (Def. RJN Exh. 9, p. 6.) Plaintiff again argued that the structure violated various regulations and that Defendants had failed to comply with the Specific Plan Ordinance. (Def. RJN, Exh. 6.) She alleged that Defendants had treated her unfairly and discriminated against her. (Def. RJN, Exh. 6, p. 12, ¶ 44.) This time, she moved to introduce the additional permits and building plans she had recently discovered as evidence. (Pl. RJN Exh. 7.) The Superior Court denied her motion, however, noting that "Petitioner fails to show that the plans were not in existence or not available at the time of the administrative hearing. Petitioner fails to show that she sought admission of the plans and evidence at the administrative hearing and that such application was denied." (Pl. RJN No. 8, "Order denying

---

at least while her appeal to WLAAPC was pending -- as previously noted, the WLAAPC did not issue its decision until April 14, 2009. (Compl. ¶ 50.)

[8] Plaintiff states these facts in her Opposition, not her Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

Plaintiff's motion to add evidence," pp. 1-2.). On January 4, 2011, the Superior Court ultimately affirmed the decisions of the administrative agencies, holding *inter alia* that the McNeills were permitted to build a storage shed as an improvement on their home and that the structure's size was in compliance with the law. (Def. RJN Exh. 7, p. 1-2.) The court did not directly address Plaintiff's argument regarding the Specific Plan Ordinance or the conduct of Defendants towards her. The court stated only that "[o]ther contentions made by petitioner are also without merit." (Def. RJN Exh. 7, p. 3.)

Plaintiff appealed to the California Court of Appeal. In its decision, the appellate court made clear that the only "narrow issues" on appeal were whether the structure was correctly classified and whether its location and size complied with local statutes. (Def. RJN Exh. 9, pp. 8, 13.) The appellate court held that the administrative agencies had correctly determined that the structure's classification, location, and size were legal. (Def. RJN Exh. 9, pp. 9-10, 13.) When making its determination, the court considered all five building permits. (Def. RJN Exh. 9, pp. 2-3.) The appellate court declined to consider all other arguments, specifically Plaintiff's argument about the Specific Plan Ordinance, because Plaintiff failed to show that she had raised those arguments at the administrative level. (Def. RJN Exh. 9, p. 13.)

Plaintiff's petition for rehearing was denied. (Def. RJN No. 11.) Plaintiff filed a petition for review with the California Supreme Court, which was also denied. (Def. RJN No. 13.) The Court of Appeal issued a remittitur on May 10, 2011. (Def. RJN No. 14.)

### D. Plaintiff's Allegations against Defendants in This Action

On January 6, 2011, while the Plaintiff's appeal was pending in state court, Plaintiff filed the instant action. (Dkt. 1.) Plaintiff generally alleges that by failing to review and process the building permits according to the Specific Plan Ordinance, Defendants erroneously allowed an illegal structure to be built. When Plaintiff notified Defendants of their error, instead of fixing it, Defendants allegedly covered up their error by concealing evidence. Despite the fact that Defendants knew there had never been a valid sign-off for the structure, every city official Plaintiff spoke to (including the five individual Defendants in this action) allegedly lied to Plaintiff about the structure's legality, and those with discretionary power issued decisions affirming the illegal building permits. (Compl. ¶¶ 23, 68-69, 72, 82-83.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

     As a result of Defendants' actions, Plaintiff claims, she received biased rulings at the administrative level and was prevented from introducing concealed evidence in her mandamus proceedings. Plaintiff alleges she was thereby deprived of her Fourteenth Amendment rights to procedural and substantive due process and equal protection. She also raises a number of state claims, including intentional infliction of emotional distress, fraud under Cal. Gov. Code § 822.2, and negligence under Cal Gov. Code §§ 815.2(a) and 820(a).

     On August 22, 2011, Plaintiff filed another Petition for Writ of Mandate in Superior Court, Case No. BS133517. (Dkt. 36.) Plaintiff is requesting that the state court direct the City, LADBS, and LACP review and process all of the structures' building plans and permits "as required by law." Although the parties have not updated the Court regarding the mandamus proceedings, the Superior Court's case summary indicates that the trial court dismissed the petition and that Plaintiff has filed an appeal.

### III.   DISCUSSION

####    A.   Plaintiff's Claims Are Barred by Res Judicata

     Defendant argues that the California state court decisions on Plaintiff's Petition for Administrative Writ of Mandate bar this action under the doctrine of res judicata, also known as claim preclusion. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). It is well-settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984).

     To determine the preclusive effect of a state court judgment, federal courts look to the law of the state that issued the judgment. *Palomar Mobilehome Park Ass'n*, 989 F.2d 362, 364 (9th Cir. 1993.) In California, "res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896 (Cal. 2002). An action is barred by res judicata only if "there has been an opportunity in the

JS-6; O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

first litigation for a fair and full hearing of the claim as asserted." *Nakash v. Superior Court*, 196 Cal.App.3d 59, 68 (1987).

     Plaintiff does not dispute that the Court of Appeal's decision constituted a final judgment on the merits, nor could she. *See Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir.1985) ("A decision on a petition for writ of mandate seeking review of an administrative order is considered final decision on the merits for res judicata purposes under California law.") Neither do the parties dispute that the parties in this action are in privity with the parties in the mandamus proceedings. Indeed, Plaintiff filed her mandamus action against the City, LADBS, and LACP, all of whom are Defendants in this action; the remaining Defendants are being sued for actions they took as employees for the named parties in the mandamus action. Thus, the only issue is whether the mandamus proceedings concerned the same cause of action alleged in this case.

     In determining whether a second lawsuit raises the same cause of action as a prior suit, California courts adhere to the primary rights doctrine. *Myfcogen*, 28 Cal. 4th at 904. Under the primary rights doctrine, a primary right is "indivisible," and the violation of a single primary right gives rise to only one cause of action. *See id.* The significant factor in determining a primary right is the "harm suffered." *Craig v. Cnty. Of Los Angeles*, 221 Cal. App. 3d 1294, 1301 (1990). "If an action involves the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit, the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Manufactured Home Cmtys., v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005). A final judgment precludes a second action "if both suits seek to vindicate the same primary right." *Myfcogen*, 28 Cal. 4th at 904.

     Causes of action may be precluded even if they were not actually litigated, so long as the plaintiff *could have* raised them in the first lawsuit. *Weikel v. TCW Realty Fund II Holding Co.*, 55 Cal.App.4th 1234, 1245 (1997) ("For purposes of this analysis, it is of no moment whether the identical causes of action were *in fact* litigated in *Weikel I*; all that is required is that Weikel have had the *opportunity* to litigate them in *Weikel I*.") A cause of action is distinct from the "remedy" or "relief" sought, "for a plaintiff may frequently be entitled to several species of remedy for the enforcement of a single right." *Id.* at 1247 (quotations and citation omitted). As the California Supreme Court has noted,

JS-6; O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

"The rule against splitting a cause of action is based upon two reasons: (1) that the defendant should be protected against vexatious litigation; and (2) that it is against public policy to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action." *Wulfjen v. Dolton* 24 Cal.2d 891, 894-895 (1944) (cited by *Weikel*, 55 Cal.App.4th at 1250-51).

  After having lost two administrative appeals during which she was afforded the chance to present her case at no less than three public hearings and having litigated her mandamus petition all the way to the California Supreme Court, Plaintiff has now brought a federal case against Defendants challenging the legality of the structure on her neighbor's property. It is true that most of Plaintiff's twelve claims against Defendants purport to be brought under 42 U.S.C. § 1983 and are couched as 14th Amendment violations. But Defendants argue that all of these claims seek to vindicate the same primary right that was at issue in Plaintiff's state court mandamus proceedings. (Def. MTD, p. 14.) The Court agrees. The primary right at issue in this action is Plaintiff's right as a property owner to seek and obtain proper enforcement of city laws on a structure that has affected her property values, which right of challenge encompasses the right to procedurally adequate adjudications. That was the same right Plaintiff asserted in state court. Both the trial court and the appellate court found that Defendants had properly enforced city laws in issuing the building permits because the structure did not violate any regulations. As such, the crux of what Plaintiff argues in this action has already been litigated.

  Plaintiff argues that she seeks vindication of different primary rights in this action: the right to a fair, impartial and competent trial, the right of due process, and the right to equal protection. (Pl. Opp., p. 15-16.) Plaintiff claims that when Defendants violated these "rights," she suffered a different injury than the injury she was asserting in the prior action. Because the most important factor in determining a primary right is the "harm suffered," Plaintiff claims that she has asserted new primary rights. Violations of the rights mentioned by Plaintiff, however, do not constitute independent *injuries*; instead they are simply different *legal theories* that can be used to recover for the same injuries. To state a claim for violation of those rights, Plaintiff must still establish a resulting injury. For example, even if Defendants had violated Plaintiff's right of due process, Plaintiff could not recover damages (with the possible exception of nominal damages) if

JS-6; O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

the violation had not independently injured her. Here, the independent harm Plaintiff allegedly suffered from Defendants' violations of her rights is the same as the harm she asserted in the state court proceedings -- an allegedly illegal structure remains standing on her neighbor's property, damaging her property values. In the state court proceedings, Plaintiff alleged that Defendants caused that harm by refusing to enforce regulations limiting the structure's size and location. The state courts denied her claims and in doing so implicitly found that the proceedings that resulted in the adverse determinations that Plaintiff is still challenging were procedurally proper.

In this action, Plaintiff alleges that Defendants caused that harm by refusing to comply with the Specific Plan Ordinance and depriving Plaintiff of various rights. Thus, although Plaintiff's legal theories have changed, the alleged *injury* remains the same.[9] By asserting the same injury, Plaintiff asks this Court to consider a primary right that the state courts have already decided, at least implicitly and inextricably.

Plaintiff argues that she did not have a chance to argue her new claims at the state court level because Defendants conspired against her and concealed material evidence. Indeed, it is apparent that although Plaintiff argued in her Petition for Writ of Administrative Mandamus that she had "been treated unfairly," that Defendants' conduct had been "discriminatory and illegal," and that Defendants had engaged in an "arbitrary and unlawful exercise of discretion" (Compl. ¶ 44 and p. 14, ¶ 3), both the trial and appellate courts refused to address those claims on the basis that Plaintiff had not raised those issues at the administrative level. (Def. RJN, Exh. 9, p. 13.) Plaintiff forgets, however, that the defense of res judicata does not require that claims were *in fact* litigated -- only that there was an *opportunity* to litigate them. In this case, Plaintiff could have litigated the claims she raises in this action because she could have raised those claims

---

[9] Plaintiff claims in her Opposition that she is not challenging the decisions of the state courts because those decisions were only based on the first and third permits. (Opp. 1-2.) The record conflicts with Plaintiff's characterization of the state court rulings. In the Court of Appeal's decision, the court expressly mentions and bases its decision on all five permits. (Def. RJN, Exh. 9, pp. 2-3.) By continuing to maintain here that the structure is illegal, Plaintiff *does* challenge the state court rulings. Indeed, throughout the Complaint, Plaintiff does not concede that the structure was legal. Instead, she repeatedly alleges that the Defendants violated her rights because they *knew* or should have known they had erred in authorizing the structure. (See, e.g., Compl. ¶¶ 64, 72-74, 77.)

JS-6; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

during her administrative proceedings. Plaintiff argues that Defendants' concealment of evidence prevented her from discovering the claims in this action until it was too late, but it is apparent that Plaintiff could have found the allegedly concealed evidence while the administrative actions were still pending. Plaintiff does not allege in her Complaint that the only way for her to obtain the structure's building permits and plans was to obtain those documents from Defendants. In fact, in her opposition to the instant motion, she states, "After the City's administrative hearings Plaintiff was told by one of her neighbors that the building plans were kept in microfilm at the LADBS and were *available to view*." (Pl. Opp. p. 7 (emphasis added).) If the documents were available to the public for viewing, Plaintiff could have found them in the exercise of due diligence, regardless of whether Defendants had "concealed" them. Accordingly, when the Superior Court rejected Plaintiff's motion to introduce the new documents as evidence in the mandamus proceeding, the court stated, "Petitioner fails to show that the plans were not in existence or not available at the time of the administrative hearing. Petitioner fails to show that she sought admission of the plans and evidence at the administrative hearing and that such application was denied." (Pl. RJN No. 8, pp. 1-2.) Because Plaintiff could have found the "concealed evidence," the Court finds she had the opportunity to raise claims based on that evidence at the administrative and mandamus proceedings.

Plaintiff also alleges in this action that she did raise the Specific Plan Ordinance argument at the administrative level, but the state courts did not consider that argument because she could not prove that she had raised it with the agencies. Plaintiff seems to believe that because the courts refused to consider certain claims, she did not have the opportunity to litigate them. The plaintiff in *Weikel* unsuccessfully made a similar argument. In *Weikel*, the trial court in the first action had declined to consider a claim because the plaintiff had failed to raise it in the pleadings. 55 Cal.App.4th at 1248, fn.15. The California Court of Appeal in the second action held that the claim was barred even though the trial court did not consider it because the claim "nonetheless *could have been raised* in *Weikel I*" had the plaintiff properly raised it in the pleadings. *Id.* (emphasis in original). In this case, had Plaintiff been able to prove that she made the Specific Plan Ordinance argument before the agencies, she would have been able to make that argument in the mandamus proceedings. In addition, had Plaintiff looked at the permits and plans earlier, she would have been able to preserve her arguments regarding Defendants' concealment of evidence, unfair treatment, and conspiracy to cover up their

JS-6; O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

failure to comply with the Specific Plan Ordinance. The fact that she failed to do so does not change the fact that she had the *opportunity* to litigate those theories.

Finally, Plaintiff argues that petitions for writ of mandate have limited preclusive effect on § 1983 actions because mandamus proceedings are not regarded as an action at all. (Pl. Opp. p. 15.) Plaintiff relies on *Mata v. City of Los Angeles*, 20 Cal.App.4th 141 (Cal. App. 2d Dist. 1993) and *George v. California Unemployment Insur. Appeals Board*, 179 Cal.App.4th 1475 (Cal. App. 5th Dist. 2009), two cases that held that petitions for writ of mandate did not preclude a separate federal action where the plaintiff won in the mandamus proceedings. Both of those cases, however, distinguished themselves from cases in which the plaintiffs lost at the mandamus level. In cases where plaintiffs have lost their petitions for writs of mandamus, courts have held that there *is* a preclusive effect under res judicata, so long as they were decided on the merits. *See, e.g., Takahashi v. Board of Trustees*, 783 F.2d 848, 851 (9th Cir. 1986) (holding plaintiff's § 1983 action was barred under res judicata by the state court's denial of her writ of mandate) ("By invoking the Constitution and § 1983, Takahashi has merely presented a new legal theory upon which she seeks recovery."); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651 - 652 (9th Cir. 1988) (holding doctor's common-law claims against hospital were precluded under California law because doctor had failed to succeed in action against hospital for a writ of mandate). Moreover, the cases cited by Plaintiff found that there was no preclusion not just on the basis that the first action was a writ of mandate but also on the basis that the primary right litigated in the mandamus proceeding was distinct from the right raised in the second action. Here, in contrast, Plaintiff lost at the mandamus level. The Court has already found that the primary right Plaintiff is asserting in this action was litigated in state court. Thus, the causes of action raised in the writ of mandate and in this action are the same.

For five years, Plaintiff has been challenging the legality of the structure in her neighbor's yard. She has had the chance to argue the structure's illegality before at least three different administrative agencies, the California Superior Court, the California Court of Appeal, and the Supreme Court of California. At each level, she was unsuccessful. Plaintiff cannot file a new action every time she finds additional facts or conjures up constitutional theories that could support her position, especially when those facts and theories could have been raised in a previous action. As the court noted in *Weikel*, "Our judicial system is intended for the resolution of disputes, rather than their

JS-6; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0158 AHM (RZx) | Date | April 17, 2012 |
|---|---|---|---|
| Title | FABIOLA WRIGHT v. CITY OF LOS ANGELES, et al. | | |

perpetuation through the ages." 55 Cal.App.4th at 1251. Because Plaintiff has already had ample opportunity to vindicate the same injury she is asserting in this action in her state court mandamus proceedings, the Court finds her claims are precluded.

**B.  Plaintiff Has Failed to State an Equal Protection Claim against Defendant Boghoskan.**

Plaintiff does assert one claim that does not appear to have been litigated in state court – her claim against LADBS inspector Defendant Bohgoskan. Plaintiff alleges that Defendant Boghoskan violated her right to equal protection under the Fourteenth Amendment when he lied and told her she was taking six inches of land from the McNeill's. (Compl. ¶ 67.) Although neither party has addressed the claim, the Court finds that Plaintiff has failed to satisfy the minimum pleading standards required by Fed. R. Civ. P. 8. "To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quotations and citation omitted). Plaintiff alleges no facts indicating that she is a member of any protected class or that her membership in that class was the reason for Defendant Boghoskan's actions. Thus, Plaintiff's claim against Defendant Boghoskan is also dismissed.

**IV.  CONCLUSION**

For the above reasons, the Court GRANTS Defendants' Motion to Dismiss. Because the Court finds that Plaintiff's Complaint cannot be cured by amendment, the Court dismisses the action with prejudice.

**JS-6**

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |